# ADLER & ASSOCIATES ENTERTAINMENT, INC.
## SALES AGENCY AGREEMENT

( Agreement __1__ of __1__ )

MAILING ADDRESS:
**Adler & Associates Entertainment, Inc.**
DBA: Adler Productions
8721 Santa Monica Blvd., #312
West Hollywood, CA 90069

PHYSICAL ADDRESS:
**Adler & Associates Entertainment, Inc.**
DBA: Adler Productions
3500 West Olive Avenue, #300
Burbank, CA 91505

Office: 310-684-3545  Fax: 800- 962-2352
www.adlersandassociatesentertainment.com
www.adlersproductions.com

Date: 9/6/16

Company Name / Name / Company Address: Jorge Movie Production / 1145 liberty St, Springfield, MA, 01104 / Rafael Jorge

PROJECT: **En Medio del Dolor**

    This letter will confirm the agreement between Rafael Jorge (referred to herein as "Producer") and **Adler & Associates Entertainment, Inc.** (referred to herein as "Adler & Associates Entertainment"), pursuant to which Producer appoints Adler & Associates Entertainment as its Sales Agent and grants Adler & Associates Entertainment the exclusive worldwide right to distribute the motion picture(s) currently entitled **En Medio del Dolor,** and conforming to the specifications to be filled out in the attached Exhibit "C" (the "Picture").

PRODUCER/LICENSOR RJ

Page 1 of 32

1. **TERRITORY**

( a ) Producer hereby appoints Adler & Associates Entertainment as its exclusive Sales Agent for the Picture in all territories of the world, its territories and possessions, excluding the Dominican Republic (the "rights"), those rights which will be represented by Adler & Associates Entertainment Inc., hereinafter known as "the Territory" and as outlined in Exhibit "A".

( i ) Each country in the Territory is defined by its political borders existing on the execution of this Agreement, along with its then existing territories, possessions and protectorates. If an area separates from a country in the Territory, then the Territory will still include the entire area that formed one political entity as of date of execution of this Agreement. If an area is annexed to a country in the Territory, then Producer grants Adler & Associates Entertainment a right of first negotiation to become the exclusive sales agent for the distribution rights in the Picture in the newly annexed area to the extent such rights become available. Adler & Associates Entertainment may include comparable provisions in all distribution agreements.

( ii ) The Territory does not include the non-contiguous areas of other countries located within the Territory, but does include non-contiguous areas of each country in the Territory as necessary for exploiting any particular distribution right. For the purposes of this Agreement, non-contiguous areas shall be defined as embassies, military and government installations, oilrigs and marine drilling sites, airlines-in-flight and ships-at-sea flying the flag of a country but not located within its contiguous geographic borders.

( iii ) For the purposes of this Agreement, the authorized languages for the Picture shall be all local languages in each country in the Territory. Where a country is designated as a specific language territory then the authorized languages for such territory are only the designated languages.

2. **TERM**

The term of this Agreement shall be for a period of fifteen (15) years (the "Term") commencing from the date of execution subject to the following conditions:

( a ) Adler & Associates Entertainment's initial rights with respect to the Picture ("Initial Period") shall be for a period of twelve (12) years commencing upon delivery of the Picture master to and issuance of a satisfactory quality control report by a laboratory approved by Adler & Associates Entertainment, so Adler & Associates Entertainment may make the Picture available to its clients for distribution.

PRODUCER/LICENSOR

( b ) This Agreement shall continue in full force and effect for an additional period of three (3) years after the expiration of the Initial Period (the "Extension Period") if during the Initial Period Adler & Associates Entertainment has generated gross sales (meaning sales to third party exhibitors, distributors or sub-distributors documented through deal memos or license agreements, whether or not the term of such license has commenced or if any monies are payable or collected) generating an amount equal to or in excess of seventy-five thousand dollars ($75,000) net to the Producer.

( c ) At the end of the Initial Period and the Extension Period Adler & Associates Entertainment will continue to represent the Picture under the terms outlined in this Agreement until such time as the Producer requests the representation to end. Both parties agree that the termination will come from the Producer in the form of a thirty (30) day written notice, at which time Adler & Associates Entertainment agrees to return the Producer all of the Picture's elements and a complete sales/licensing report.

## 3.   **RIGHTS**

( a ) Producer hereby grants to Adler & Associates Entertainment, in its capacity as Sales Agent and executive producer, during the Initial and Extension Periods, if applicable, the exclusive right throughout the Territory, to exhibit, distribute, sub-distribute, market, exploit, sell, perform, promote and otherwise exploit the Picture on the Producer's behalf, and will issue licenses to others (including but not limited to sub-distributors) relative thereto, in any and all media, on any and all distribution platforms, existing now or developed in the future, including but not limited to, theatrical, "non-theatrical" exhibition, free television exhibition, pay-per-view, VOD, pay/cable/satellite television exhibition and videogram (e.g., video cassette and video disc).

( b ) All third party contracts will carry a term of no more than twenty (20) years. Any third party contracts which would exceed the twenty (20) year maximum must either (i) be approved by Producer in advance of those contracts being signed with the third party or (ii) such contracts may be concluded by Adler & Associates Entertainment with such third parties if they are made subject to subsequent ratification and approval by Producer.

( c ) Adler & Associates Entertainment and its licensees shall retain the right to change the title of the Picture as is deemed necessary in order to execute its obligations and responsibilities in this Agreement.

PRODUCER/LICENSOR  $R\text{-}J$

( d ) Adler & Associates Entertainment and its licensees shall retain the right to edit the visual and audio content the Picture as necessary in order to create versions of the Picture that will be approved by censors, ratings boards, broadcast authorities and other regulatory bodies in the Territory, or to otherwise enable the exploitation of the rights specified in 3(a). Adler & Associates Entertainment agrees that no alterations will be made to the original negative or video master of the Picture.

( e ) Adler & Associates Entertainment and its licensees shall retain the right at their discretion to incorporate into the Picture preceding and/or following the main and end titles of the Picture and trailers thereof, and in all publicity and advertising relating thereto, in such manner, position, form and substance as Adler & Associates Entertainment or its licensees may elect, Adler & Associates Entertainment's or its licensees trademark, logo and presentation announcement, and the designation of Adler & Associates Entertainment or its licensees as the distributor of the Picture.

4.      **PRODUCER RESPONSIBILITIES**

( a ) Producer will fully and timely cooperate with Adler & Associates Entertainment as necessary for Adler & Associates Entertainment to render all services, including meaningfully and timely providing all required information, approvals, consultations and decisions. Producer agrees that any failure by Producer to render any such cooperation as and when required will excuse Adler & Associates Entertainment from performing any service dependent on such cooperation.

( b ) Producer's approval means written or verbal notice to Adler & Associates Entertainment that Producer affirmatively approves or disapproves a matter for which approval is required or requested, which will not be unreasonably withheld or delayed. Approval will be deemed given if Adler & Associates Entertainment does not receive such notice within twenty-four (24) hours during a film market or film festival, or five (5) days otherwise, of Producer's receipt of the request for approval. An ambiguous or incomplete notice will be deemed approval of any item not affirmatively disapproved. If Producer disapproves any matter, then upon reasonable request Producer will timely identify to Adler & Associates Entertainment any steps needed to obtain approval.

( i ) Producer shall furnish to Adler & Associates Entertainment any and all phone numbers, fax numbers, e-mail addresses or instant messaging account information necessary for Adler & Associates Entertainment to contact Producer on short notice, and Producer shall make their best efforts to be available for consultation by Adler & Associates Entertainment during film markets and film festivals attended by Adler & Associates Entertainment.

PRODUCER/LICENSOR

( c ) Producer shall maintain an active Facebook page for the Picture, and shall also maintain active Twitter and Google accounts. Producer shall follow the official Adler & Associates Entertainment/Marie Adler Facebook page and Twitter feed. Producer shall also subscribe to the official Adler & Associates Entertainment YouTube channel and shall invite others to do the same with a goal of adding no fewer than fifty (50) new subscribers.

5. **CREDITS**

( a ) Adler & Associates Entertainment shall take an executive producer credit on the Picture under the name of "Marie Adler" ("the EP Credit"). The EP Credit shall appear as applicable in the opening and ending credits of the Picture in all copies of the Picture delivered to Adler & Associates Entertainment by Producer.

( b ) The EP Credit shall also appear on posters, home video releases and promotional materials whenever a billing block is present.

6. **FIRST RIGHT OF REFUSAL**

( a ) Should any sequel, prequel, remake, web series or television series based upon the Picture or utilizing its primary characters therein ("the Derivative Property") be produced during the Term of this Agreement, Adler & Associates Entertainment will retain the first right of refusal to act as its Sales Agent.

( b ) Producer understands that they shall not enter into any other agreement for the sale, distribution, marketing, promotion, performance, exploitation or sale or licensing of ancillary products of the Derivative Property without written approval from Adler & Associates Entertainment.

7. **EXCLUSIVITY**

( a ) Producer agrees that it will not exhibit, distribute, sub-distribute, market, exploit, sell, perform or otherwise exploit the picture (including the sale of legally manufactured copies purchased from Adler & Associates Entertainment's licensees) at any time during the Term of this Agreement.

PRODUCER/LICENSOR  R T

( b ) Producer shall have the right to submit the Picture for consideration and exhibition in film festivals and film competitions. Producer shall be solely responsible for any and all entrance, submission, exhibition, projection and shipping and handling fees associated with submitting the Picture into festivals and competitions.

( i ) Producer shall provide Adler & Associates Entertainment with written notification, including date, time and address, of all scheduled film festival screenings.

( ii ) Producer shall provide Adler & Associates Entertainment with written notice of all awards received by Picture at any film festival or film competition.

( iii ) Where applicable, Adler & Associates Entertainment will be listed as the international sales agent and distributor for the Picture in film festival programs, catalogues, websites or promotional literature.

( c ) Producer shall provide advance notice in writing of all scheduled television appearances, radio appearances or public speaking engagements in which the Picture is to be discussed.

## 8.   **BEST EFFORTS**

Adler & Associates Entertainment agrees to at all times during the Initial Period and the Extension Period, if applicable to use its best efforts in rendering services as Sales Agent as such services and designations are customarily understood and rendered in the motion picture business.

## 9.   **FEES AND EXPENSES**

( a ) As between Adler & Associates Entertainment and Producer, Adler & Associates Entertainment shall have the sole right to collect all monies which may be generated from Adler & Associates Entertainment's activities as Producer's Sales Agent. From such gross receipts Adler & Associates Entertainment shall be entitled to retain thirty-five percent (35%) as a sales commission from the sales of the Picture and any and all ancillary products.

PRODUCER/LICENSOR   R J

( b ) Adler & Associates Entertainment shall be entitled to collect a one-time audit fee of five thousand nine hundred dollars ($5900) and a one-time delivery fee of five thousand one hundred dollars ($5100). These fees shall be collected only from the monies received from the sales of the Picture and any and all ancillary products and shall be collected prior to recoupable "out of pocket" expenses as specified in 9 (c), (d) and (e) below, as well as prior to disbursement of commission split. Producer hereby acknowledges that they have been informed that these fees are a cost of doing business for Adler & Associates Entertainment. Furthermore, Producer affirms that any and all questions they have about these fees have been answered to their satisfaction by Adler & Associates Entertainment. Producer affirms that they accept these fees as a cost of doing business for Adler & Associates Entertainment and have no further questions.

( c ) Subject to the limitations specified in 9(d) below, Adler & Associates Entertainment shall be entitled to reimburse itself for its actual, "out of pocket" distribution expenses from the balance of the gross receipts. It is agreed that such distribution expenses shall be limited to all reasonable and necessary costs customarily deemed "distribution expenses" in the motion picture, television and video industries, including but not limited to trailers, artwork, advertising, market costs, non-market administration expenses, legal, accounting, laboratory, transfer fees, etc. and such other expenses it may incur or deem it necessary to incur in its distribution of the Picture. There shall be no deduction for overhead fees by Adler & Associates Entertainment nor shall any deduction result in a double deduction for Adler & Associates Entertainment.

( d ) It is agreed that said deductible expenses shall be those expenses defined in the following categories:

( i ) Film and television market costs necessary in order for Adler & Associates Entertainment to attend, exhibit, promote and market the Picture at foreign and domestic film and television markets.

( ii ) Cost of producing trailers, artwork, electronic press kits, making-of documentaries, commentary tracks and other promotional materials to be utilized in the exploitation of the Picture, including the exploitation of the Picture at film, television and/or video markets, which Producer hereby grants permission to Adler & Associates Entertainment to create.

PRODUCER/LICENSOR  R J

( **iii** ) Actual, direct "out of pocket" expenses for advertising and publicity costs; print, tape, cassette and disc manufacturing costs; packaging, shipping, handling, storage, insurance and customs costs; translation, dubbing and subtitling costs; aggregator conversion, encoding and delivery costs; format conversion costs and editing costs; censorship and rating board fees; data storage and back-up costs; copyright registration fees and all insurance premiums and other fees or costs which Adler & Associates Entertainment may agree to pay on behalf of Licensor, if any.

( **e** ) It is agreed that the total of all expenses recoupable by Adler & Associates Entertainment pursuant to sub-paragraphs 9(d)(i), (ii) and (iii) above shall not exceed sixty-five thousand dollars ($65,000) without the prior written approval of Producer.

( **f** ) GROSS RECEIPTS are hereby defined as all non-returnable revenues, sums, compensations, monies and other forms of consideration collected by Adler & Associates Entertainment as license fees or otherwise through exploitation of the Picture, but excluding any sales, use or remittance taxes collected and paid to the appropriate authorities by Adler & Associates Entertainment. No amounts shall be included in Gross Receipts until received by Adler & Associates Entertainment in the United States in United States dollars. Any amounts received by Adler & Associates Entertainment in foreign currencies shall be converted into U.S. dollars and remitted to Adler & Associates Entertainment as promptly as possible. Gross Receipts shall also include any awards, damages, fees or other amounts collected by Adler & Associates Entertainment from third parties for infringement of the Picture's copyright or any of Adler & Associates Entertainment's rights hereunder, but only if legal fees and other expenses incurred in connection with such amounts are recoupable as distribution expenses.

( **g** ) All other remaining proceeds shall be paid to the Producer (the "Producer's Share").

## 10.   SCHEDULED MINIMUMS

( **a** ) The parties have or will mutually approve a schedule of asking prices and minimum prices for the exclusive rights to the Picture when sold individually (attached hereto as Exhibit "A"). During the first one hundred and eighty (180) days after execution of this Agreement, Adler & Associates Entertainment will not accept any offer for exclusive video or television rights in a territory which do not provide for a minimum guarantee or license fee equaling or exceeding that minimum price set forth in said schedule for such rights without first obtaining the Producer's approval, except as provided for below in sections 10(a)(i), 10(a)(ii) and 10(a)(iii).

PRODUCER/LICENSOR   ᏒᎫ

( i ) During the first one hundred and eighty (180) days after execution of this Agreement, Adler & Associates Entertainment may unilaterally modify any asking price or minimum price in Exhibit "A" upwards or downwards in response to changes in market conditions, providing that the total increase or decrease is equal or less than three percent (3%) of the currently agreed upon figure, and Producer will be informed of any such changes in writing.

( ii ) Producer hereby acknowledges that the asking prices and minimum prices on Exhibit "A" are only estimates that are based upon available market data for similar motion pictures and Producer understands that Adler & Associates Entertainment does not guarantee that any particular right or territory can be licensed or that any particular asking price or minimum price can be obtained. Producer accepts and acknowledges that the value of the Picture in any given territory is subject to increase or decrease based upon changing conditions in the international film market. As such, the parties also agree that it may be necessary to review and revise such asking prices and minimum prices during the first one hundred and eighty (180) days after execution of this Agreement to more accurately reflect prevailing market conditions.

( iii ) Producer hereby acknowledges that the asking prices and minimum prices in Exhibit "A" have been calculated based upon the assumption that all delivery items listed on the attached Exhibit "B" will be provided by Producer to Adler & Associates Entertainment. Producer acknowledges and accepts that failure to supply all required delivery items when required by Adler & Associates Entertainment may result in the devaluation of the rights to the Picture by potential distributors. In the event that Producer fails to supply all required delivery items when required, Adler & Associates Entertainment may, at its sole discretion, reduce the asking price and minimum price for any territory.

( b ) After the first one hundred and eighty (180) days following the date of execution for this Agreement, Adler & Associates Entertainment may unilaterally modify any asking price or minimum price in Exhibit "A" upwards or downwards in response to changes in market conditions, and   Producer will be informed of any such changes in writing.

( c ) When entering into agreements for new media rights to the Picture, Producer grants to Adler & Associates Entertainment full and complete permission to set or accept rental, purchase and license prices appropriate to each territory based upon the prevailing market price of motion pictures that are similar to the Picture in terms of their age, audio format, video resolution and distribution history.

PRODUCER/LICENSOR

( i ) For the purposes of this Agreement, "new media rights" shall be defined to include, but not be limited to, all forms of video- on-demand (including, but not limited to, transactional video-on-demand, advertiser supported video-on-demand, subscription video-on-demand, cable video-on-demand, Internet Protocol video-on-demand, pay-per-view video-on-demand and free video-on-demand), all forms of electronic sell-thru, all forms of download-to-own or download to burn, all forms of digital downloading, all forms of manufacture-on-demand, all forms of peer-to-peer and all other forms of Internet or wireless distribution or dissemination existing now or in the future.

( d ) If the Picture is included in a package with other motion pictures sold to a buyer, then the price allocated to the Picture shall be on the basis of a reasonable allocation of revenues in light of the commercial worth of all the motion pictures in the package. Whenever the Picture is sold as part of a package, Adler & Associates Entertainment shall disclose the license fee allocated to each motion picture in the package.

## 11.   ACCOUNTING

( a ) Once delivery of the Picture has commenced, accounting to Producer shall be rendered within ninety (90) days following the close of each fiscal quarter during the Term of this Agreement. Any moneys shown to be owing to Producer shall accompany each statement showing a breakdown by territory as well as a breakdown of expenses.

( b ) Upon receipt of written request, Adler & Associates Entertainment agrees to provide the Producer with copies of all Deal Memos which pertain to the Picture within thirty (30) working days.

PRODUCER/LICENSOR   R J

( c )  Adler & Associates Entertainment further agrees to maintain a complete set of files and records of accounts which pertain to the Picture and in its main offices. The Producer shall have the right, upon giving Adler & Associates Entertainment thirty (30) working days prior written notice, to audit Adler & Associates Entertainment's books and records insofar as they relate to this Agreement, at Adler & Associates Entertainment's regular place of business and during Adler & Associates Entertainment's regular working hours. Such audit shall be conducted at Producer's sole cost and expense. In addition, such audit shall be conducted no more frequently than once every six months and for not more than thirty (30) consecutive days, no statement may be audited more than once and no such audit shall be conducted in a manner that will unreasonably interfere with the normal operations of Adler & Associates Entertainment's business. Any statements not disputed or records not audited by Producer for a period of twenty-four (24) months shall be deemed final and correct.

## 12.    **DELIVERY, QUALITY CONTROL AND MEDIA PROCESSING**

( a ) Producer agrees to deliver to Adler & Associates Entertainment, or to such laboratories as are designated by Adler & Associates Entertainment, those master and other materials indicated in the attached Exhibit "B", sufficient to enable Adler & Associates Entertainment to make delivery of the Picture to all of its licensees. Such delivery is to be made no later than fifteen (15) days after verbal or written request from Adler & Associates Entertainment. Delivery materials are to include but not be limited to a laboratory access letter, a satisfactory quality control (QC) report for the Picture master from a laboratory approved by Adler & Associates Entertainment, and a fully transcoded and conformed delivery package from a media processing facility approved by Adler & Associates Entertainment. All materials to be delivered to Adler & Associates Entertainment shall be of satisfactory technical quality so as to enable Adler & Associates Entertainment's licensees to utilize same and, accordingly, shall conform to all of the technical standards as are customary in the motion picture, television and home video industries. It is further agreed that all delivery materials required to effect this Agreement must be reviewed and approved by Adler & Associates Entertainment.

PRODUCER/LICENSOR

( b ) It is further agreed that in the case where a specific delivery element is needed for delivery but has not yet been created by the Producer, Adler & Associates Entertainment agrees to give the Producer a conditional approval before closing the deal, and after all conditions have been met Adler & Associates Entertainment shall negotiate delivery so that there will be sufficient advance notice given to create the element needed to close the transaction. If the Producer fails to supply the needed delivery element, Adler & Associates Entertainment may or may not at its own discretion create the element necessary to complete delivery to its client and take the cost of the element out of the proceeds from that sale.

( c ) In the event Producer fails to i ) completely deliver all materials specified on Exhibit "B" or ii ) if such materials are not of acceptable technical quality so as to enable Adler & Associates Entertainment's licensees to utilize same or iii ) if such materials do not conform to all of the technical standards as are customary in the motion picture, television and home video industries or iv ) which are rejected by Adler & Associates Entertainment in its sole discretion as being undeliverable to its Licensees, then Adler & Associates Entertainment shall so advise Producer in writing of such non-delivery. Thereafter, Producer shall have thirty (30) days from the date of such notice ("delivery cure period") to correct said deficiencies at Producer's sole cost and expense and redeliver such corrected materials to Adler & Associates Entertainment. If Producer fails to deliver said corrected materials to Adler & Associates Entertainment within the delivery cure period, then Adler & Associates Entertainment, in its sole discretion, may expend those amounts required to correct said deficiencies. In such event, Adler & Associates Entertainment shall be entitled to recoup said costs out of one hundred percent (100%) of the Picture's gross receipts, as well as any additional costs incurred by Adler & Associates Entertainment as a result of Producer's failure to deliver the Picture.

13.   **WARRANTIES AND REPRESENTATIONS:**

( a ) Producer warrants, represents and covenants that:

( i ) It owns or controls the exclusive right to distribute, exploit, exhibit, broadcast, publicize, reproduce and otherwise derive revenue from the licensed Picture in the manner and form provided for in this Agreement.

( ii ) The licensed Picture does not violate nor infringe upon the common-law right, copyright, trademark or literary rights or right of privacy of any person and will not contain any material which is libelous, slanderous or defamatory.

PRODUCER/LICENSOR   R T

( **iii** ) Producer warrants that the data on any and all hard drives, flash drives or optical discs provided to Adler & Associates Entertainment for the purposes of delivering the Picture shall also be backed up and archived elsewhere by Producer to prevent any irreversible loss of such data. Producer hereby acknowledges that Adler & Associates Entertainment has advised them that, prior to shipping, they are to remove all personal information from such drives or discs and to remove all other data not necessary for the delivery of the Picture. Producer also acknowledges that Adler & Associates Entertainment has advised them to insure all shipments of materials sent to Adler & Associates for the purposes of delivering the Picture. Producer further acknowledges that, in the event of damage to, destruction of or data loss from hard drives, flash drives or optical discs, Adler & Associates Entertainment shall be responsible only for the cost of replacing such hard drives, flash drives or optical discs with media of an equivalent speed and storage capacity, and shall not be responsible for any other damages or costs stemming from any loss of data or breach of privacy from, or any damage to or destruction, failure or mishandling of the media.

( **iv** ) Adler & Associates Entertainment shall have no responsibility or liability for any services, elements, or products performed or provided by any person, firm or corporation in connection with the production of the licensed Picture, and Adler & Associates Entertainment shall in no way be responsible or liable for the making of payments to any third party, whether in the form of deferments, participations or otherwise by virtue of the permitted use made of the licensed Picture hereunder, including all residuals, royalties, fees, contributions and other benefits required under any guild, union or other agreement.

( **v** ) Producer warrants that it has paid or will pay all production costs, taxes, fees and charges with respect to the production and delivery of the Picture except as provided herein. As used herein, "production costs" will include all costs incurred with the production of the Picture and its delivery, including payments to writers, producers, directors, artists, and all other persons rendering services in connection with the Picture and/or its delivery.

PRODUCER/LICENSOR

( **vi** ) Producer warrants that all music synchronization, master use and other licenses for music or lyrics incorporated within the Picture sufficient to permit Adler & Associates Entertainment anticipated use hereunder have been properly obtained; that such licenses shall be maintained throughout the Term; and that the performing rights in the music are either (a) controlled by a performing rights society having jurisdiction, or (b) in the public domain, or (c) controlled by Producer to the extent necessary to permit Adler & Associates Entertainment's use hereunder. Producer agrees that it will submit copies of all documents pertaining to the rights to use music in the Picture.

( **vii** ) That the Picture has been and will continue to be protected under copyright; that Producer will maintain and defend such copyright protection; and that if Producer fails to maintain and defend such copyright, Adler & Associates Entertainment may, at Adler & Associates Entertainment's sole discretion, elect to maintain and defend such copyright, and is hereby appointed Producer's attorney-in-fact for such purpose, and may recoup any amounts expended as an additional distribution expenses.

( **viii** ) Upon request by Adler & Associates Entertainment and only at a time where it is deemed necessary to complete a deal, the Producer will secure and maintain during the Term of this Agreement Errors and Omissions ("E&O") insurance providing the Picture with coverage. Producer shall furnish Adler & Associates Entertainment with a certificate of insurance naming Adler & Associates Entertainment as an additional insured party and which provides no less than sixty (60) days notice to Adler & Associates Entertainment in the event of expiration or termination.

( **a** ) Producer warrants and affirms their understanding that the estimated size of the E&O insurance policy will be ONE MILLION DOLLARS / THREE MILLION DOLLARS ($1,000,000.00 / $3,000,000.00) of coverage, but that the amount required may increase based upon market conditions, Picture budget, licensee requirements and territories covered.

( **b** ) Producer warrants and affirms their understanding that, if they fail to secure and maintain an E&O insurance policy when requested, then Adler & Associates Entertainment or Adler & Associates Entertainment's licensees have permission to secure a policy for coverage from an insurer of their choosing, the cost of which shall be recoupable by Adler & Associates Entertainment or its licensees.

PRODUCER/LICENSOR  Қ丅

( c ) Producer further affirms that, due to the size, structure, valuation, income and number of employees of Adler & Associates Entertainment and its licensees, E&O insurance policies purchased and maintained by them are likely to be substantially more expensive than E&O policies purchased and maintained by Producer.

( d ) Producer hereby accepts that, in the event that Adler & Associates Entertainment purchases an E&O policy to cover the Picture, the total limit on recoupable expenses agreed upon in paragraph 9(e) shall be increased by an amount not to exceed twenty thousand dollars ($20,000). Before the total limits set by paragraph 9(e) are increased, Producer will be informed of the change in writing and given an opportunity to purchase their own E&O insurance policy by the date necessary in order to successfully execute a licensing agreement.

( ix ) Producer warrants that it has all rights, permissions and capabilities necessary in order to deliver the Picture to Adler & Associates Entertainment. Furthermore, Producer warrants that:

( a ) It has either physical custody of all film elements, video elements, audio elements, video editing digital files, sound editing digital files, sound mixing digital files, graphical elements, graphical digital files, graphical editing digital files, visual effects files and visual effects editing digital files that are needed in order to deliver the Picture to Adler & Associates Entertainment, or that all such elements and digital files are stored under Producer's name in a laboratory or data storage facility.

( b ) There are no technical problems, unpaid bills, liens, injunctions or legal actions either initiated, pending or threatened that would prevent Producer from being able to access all elements and digital files necessary to deliver the Picture within fifteen (15) days of receiving verbal or written request from Adler & Associates Entertainment.

( x ) Producer warrants that it understands that Adler & Associates Entertainment is a film production, film sales, film distribution, film finance and film consulting company. Producer warrants that it understands that Adler & Associates Entertainment is representing other producers in a similar capacity, is producing and financing motion pictures, and is otherwise engaged as a consultant in production, finance, sales and distribution of motion pictures.

PRODUCER/LICENSOR R J

( **xi** ) That all warranties and representations made herein by Producer shall survive the performance or termination of this Agreement.

( **b** ) Adler & Associates Entertainment represents and warrants to the Producer and covenants, as follows:

( **i** ) There are no existing or threatened claims or litigation which would adversely affect or impair Adler & Associates Entertainment's ability to completely perform under this Agreement.

( **ii** ) Adler & Associates Entertainment agrees that all versions of the Picture disseminated will carry the copyright noticed currently affixed to the Picture, or an equivalent notice translated into the language of exhibition or distribution for that version of the Picture.

( **iii** ) Adler & Associates Entertainment further agrees not to delete or modify the screen credits afforded to cast, crew or other personnel as such credits now appear on the positive prints of the Picture without providing equivalent credits in English or translated into another language of exhibition and distribution. In exercising the rights set forth herein, Adler & Associates Entertainment shall not alter or delete any logo or trademark notice appearing on the Picture without providing an equivalent notice in English or translated into another language of exhibition and distribution.

( **iv** ) Adler & Associates Entertainment will not exploit any reserved rights or any other rights not specifically licensed to Adler & Associates Entertainment in this Agreement, nor will Adler & Associates Entertainment exhibit or market the Picture outside the Territory or after the Term.

( **v** ) Adler & Associates Entertainment will keep accurate records of all transactions related to its activities hereunder.

PRODUCER/LICENSOR  R J

14.   **INDEMNITY**

( a ) Producer does hereby and shall at all times indemnify and hold harmless Adler & Associates Entertainment, its subsidiaries and licensees, and its and their officers, directors and employees, and its and their exhibitors, licensees and assignees, of and from any and all charges, claims, damages, costs, judgments, decrees, losses, expenses (including reasonable outside attorneys' fees), penalties, demands, liabilities and causes of action, of any kind or nature whatsoever by reason of, based upon, relating to, or arising out of a breach or failure of any of the covenants, agreements, representations or warranties of Producer hereunder or by reason of any claims, actions or proceedings asserted or instituted, related to or arising out of any such breach or failure or conduct or activity resulting in a breach. All rights and remedies hereunder shall be cumulative and shall not interfere with or prevent the exercise of any other right or remedy which may be available to Adler & Associates Entertainment. Upon notice from Adler & Associates Entertainment of any such claim, demand or action being advanced or commenced, Producer agrees to adjust, settle, compromise, litigate, contest, satisfy judgments and take any other action necessary or desirable for the disposition of such claim, demand or action.

( b ) Adler & Associates Entertainment will defend, indemnify and hold harmless Producer (including Producer's officers, directors, partners, owners, shareholders, employees,and agents) against any and all third party claims and expenses (including, without limitation, reasonable attorneys' fees) and liabilities, due to Adler & Associates Entertainment's failure to comply with any restriction on the exercise of any rights granted to it, any action or inaction taken in the course of performance of this agreement or for breach of any of Adler & Associates Entertainment's obligations, representations or warranties set forth in this Agreement.

15.   **MANNER OF DISTRIBUTION**

Adler & Associates Entertainment has not made any express or implied representation, warranty, guarantee or agreement as to the manner of extent of any distribution or exploitation of the Picture, nor the amount of money to be derived from the distribution, exhibition and exploitation of the Picture, nor as to the maximum or minimum amount of moneys to be expended in connection therewith, nor that there will be any sums payable to the Producer hereunder, nor that the Picture will be favorably received by exhibitors or by the public, or will be distributed or exploited continuously.

PRODUCER/LICENSOR R J

16.    **NO GUARANTEE**

Producer acknowledges that exploiting motion pictures is a speculative business. As such, Adler & Associates Entertainment makes no representation or warranty, express or implied, regarding the ability to conclude any distribution agreement, to exploit the Picture or to earn or collect any gross receipts or Producer's Share. Any estimates or projections about possible distribution agreements or performance of the Picture are statements of opinion only. Producer acknowledges that Producer's Share is merely an accounting entry and Adler & Associates Entertainment does not guarantee that gross receipts will be earned or Producer's Share will be payable in any amount. Adler & Associates Entertainment does not guarantee the performance of any distributor under any distribution agreement and in no event shall Adler & Associates Entertainment incur any liability based upon any claim by the Producer that Adler & Associates Entertainment has failed to realize receipts or revenue which should or could have been realized.

17.    **DEFAULT PROVISIONS**

( a ) Each party to this Agreement will give the other party notice of any claimed default under this Agreement. If the defaulting party fails to cure the default within fourteen (14) days for a monetary default or twenty-one (21) days for a non-monetary default after receipt of notice, the aggrieved party may pursue any available right or remedy for such uncured default.

( b ) Each party to this Agreement may only seek to recover incidental or direct damages occasioned by any default. Each party waives any right to seek special, consequential or punitive damages, including "lost profits" from any default. This waiver is an independent covenant that survives the failure of essential purpose of any other remedy, even if limited.

( c ) At any time after an uncured material default, an aggrieved party will have the right to give notice of its intent to cancel this Agreement to the defaulting party. A "cancellation" means a termination of this Agreement for cause, *i.e.*, for an uncured material default.

PRODUCER/LICENSOR

( **d** ) In case of cancellation, each party will retain all its rights and remedies due for any performance rendered up to the time of cancellation including all claims for recoverable damages, commissions, and recoupable expenses.  In addition, with respect to any existing distribution agreements, Adler & Associates Entertainment will continue to service all distribution agreements substantially negotiated or concluded by Adler & Associates Entertainment up to the time of cancellation, including collecting all gross receipts and making recoupments attributable to such distribution agreements, but Adler & Associates Entertainment may not negotiate any new distribution agreements Adler & Associates Entertainment may include in any distribution agreement a provision that Producer will have no right to terminate, cancel or rescind such distribution agreement, or to seek any equitable relief to enjoin or restrain the distributor's exploitation of the Picture, Producer's sole remedy for any breach of the distribution agreement being limited to monetary damages.

( **e** ) Producer agrees that the rights to the Picture are of a unique artistic or intellectual value, the loss of representation of which cannot be fully compensated by monetary damages, so that Adler & Associates Entertainment will have the right to seek equitable relief, including an injunction, for a default by Producer. Nothing in this Agreement prevents Producer from seeking equitable relief for any attempted exploitation of any distribution rights or allied rights in the Picture outside the scope of this Agreement or any applicable distribution agreement.

( **f** ) Adler & Associates Entertainment may set-off and recoup from Producer's Share whenever due any overpayment of Producer's Share or any other amount due Producer from Adler & Associates Entertainment under this Agreement.

## 18.   **ARBITRATION**

Any controversy or claim arising out of or in relation to this Agreement or the validity, construction or performance of this Agreement, or the breach thereof, shall be resolved by final, binding and non-appealable arbitration under the Rules for International Arbitration of the Independent Film and Television Alliance (I.F.T.A.) in effect when the arbitration is filed (the "I.F.T.A. Rules"). Each party waives any right to adjudicate any dispute in any other court of forum, except that a party may seek interim relief before the start of arbitration as allowed by the I.F.T.A. Rules. The arbitration will be held in the forum designated in the deal terms, or, if none is designated, as determined by the I.F.T.A. Rules. The parties will abide by any decision in the arbitration and any court having jurisdiction may enforce it. The parties submit to the jurisdiction of the courts in the Forum to compel arbitration or to confirm an arbitration award. The parties agree to accept service of process in accordance with the I.F.T.A. Rules.

PRODUCER/LICENSOR

## 19.   <u>ASSIGNMENTS</u>

( **a** )   Except as provided in this paragraph, Adler & Associates Entertainment may not assign this Agreement, or rights under it, or delegate any duties, in whole or in part, voluntarily or involuntarily, whether outright or for security, without prior notice of Producer's consent, and any attempt to do so without such prior notice will be void and of no effect.  For these purposes an assignment includes an outright transfer, the granting of any lien or security interest, and a sale of substantially all of the assets of Adler & Associates Entertainment or a conveyance of a majority of the membership interests or voting equity securities of Adler & Associates Entertainment.  As a condition to giving any consent, Producer may require the assignee or delegate to assume in an authenticated record all obligations of Adler & Associates Entertainment under this Agreement.  However, Adler & Associates Entertainment may without prior notice of Producer's consent:

( **i** )  Make an assignment or delegation to any affiliated, parent or subsidiary company of Adler & Associates Entertainment.

( **ii** )  Provided that Adler & Associates Entertainment is not then in default, make an assignment to an entity which acquires substantially all of Adler & Associates Entertainment's assets and which assumes in an authenticated record all of Adler & Associates Entertainment's obligations under this Agreement.

( **iii** )  Assign or grant a security right in any portion of Adler & Associates Entertainment's commission or recoupable expenses.

( **iv** )  Authorize or appoint subagents for any territories or distribution rights, provided the subagent agrees to be bound by this Agreement. Any assignment or delegation allowed under this paragraph will be binding on and inure to the benefit of the assignee or delegate but will not release Adler & Associates Entertainment from its obligations under this Agreement.

PRODUCER/LICENSOR  RJ

( **b** ) Except as provided in this paragraph, Producer may not assign this Agreement, or rights under it, or delegate any duties, in whole or in part, voluntarily or involuntarily, whether outright or for security, without prior notice of Adler & Associates Entertainment's consent, and any attempt to do so without such prior notice will be void and of no effect. For these purposes, an assignment includes an outright transfer, the granting of any lien or security interest, and a sale of substantially all of the assets of Producer or a conveyance of a majority of the membership interests or voting equity securities of Producer. As a condition to giving any consent, Adler & Associates Entertainment may require the assignee or delegate to assume in an authenticated record all obligations of Producer under this Agreement. However, once Producer has made complete delivery of all items on "Exhibit "B", Producer may assign, outright or for security, without the need for Adler & Associates Entertainment's prior consent, any portion of Producer's Share by giving Adler & Associates Entertainment notice of the assignee and place for payment. Any assignment or delegation allowed under this paragraph will be binding on and inure to the benefit of the assignee or delegate but will not release Producer from its obligations under this Agreement.

20.   **INTERFERENCE**

Both parties represent and warrant to the other: that it has full right, power and authority to enter into and perform under this Agreement, and that it is under no obligation, contractual or otherwise, which might in any way interfere with its full and complete performance of this Agreement.

21.   **GOVERNING LAW**

This Agreement shall be governed by the laws of the State of California.

22.   **COMPLETE AGREEMENT**

This Agreement expresses the entire understanding of the parties hereto and replaces any and all former agreements, understandings or representations relating in any way to the subject matter hereof, and contains all of the terms, conditions, understandings and promises of the parties hereto. Each party acknowledges that no representation or agreement not expressly contained in this Agreement has been made to the other party or any of such party's agents, employees or representatives. Agreement may not be modified or amended except in writing signed by all parties to this Agreement.

PRODUCER/LICENSOR

### 23.    COSTS

If any legal action, arbitration or other proceeding is brought for the enforcement of or to declare rights or obligations under this Agreement or as a result of a breach, default or misrepresentation in connection with any of the provisions of this Agreement, its subject matter or the actions, statements or conduct of the parties hereunder, the prevailing party shall be entitled to recover from the other party all reasonable costs and expenses incurred in connection therewith, including but not limited to attorney's fees, attorney's costs and court costs, in addition to any other relief to which that party may be entitled.

### 24.    PUBLICITY

No party will issue any publicity release or announcement concerning the contemplated transaction without advance written approval of the form and substance thereof by the other parties, which approval shall not be unreasonably withheld.

### 25.    CONFIDENTIALITY

( a ) In the event that it is deemed to be necessary and/or desirable for Adler & Associates Entertainment to provide the Producer with, or allow access to, proprietary, intellectual, technical, or business data, and/or other confidential information of Adler & Associates Entertainment (collectively the "Confidential Information"), the Producer, individually and on behalf of those they represent and/or employ, agree that they are under an obligation of confidentiality.

( b ) Producer hereby agrees that Adler & Associates Entertainment's Confidential Information has significant commercial value that would be diminished by unauthorized disclosure. Accordingly, Producer agrees that it shall not use any advantages derivable from such information in its own business or affairs, unless the same is done pursuant to a new agreement with all other parties to this Agreement. Each party shall be held responsible and liable in case of a breach of this Agreement both in their professional and personal capacity.

PRODUCER/LICENSOR

( c ) For the purposes of this Agreement, Confidential Information shall include, and shall be deemed to include, all information conveyed by Adler & Associates Entertainment to Producer orally, in writing, by demonstration, or by other media. Confidential Information shall be considered as such at the time of transmittal. Confidential Information may include, by way of example but without limitation data, know-how, contacts, contracts, media, scripts, software, formulas, processes, designs, sketches, photographs, plans, drawings, specifications, samples, reports, sales projections and estimates, information obtained from previous or current clients of Adler & Associates Entertainment, and information relating to transactional procedures. However, Confidential Information shall not include information, which can clearly demonstrated to be:

( i ) Generally known or available to the public, through no act or omission on the part of the receiving party; or

( ii ) Provided to the receiving party by a third party without any limit or restriction on disclosure and without breach of any obligation of confidentiality to a party to this Agreement; or independently developed by the receiving party without use of the Confidential Information.

( d ) Producer agrees that when receipt of any Confidential Information has occurred:

( i ) Producer shall not disclose or communicate Confidential Information to any third party, except as herein provided. Producer shall protect such information from disclosure by reasonable means, including but not limited to at least the same minimal level of security that Producer uses for its most crucial proprietary and trade secret information.

( ii ) Producer shall reasonably protect the Confidential Information with not less than the same degree of care exercised by its own personnel to protect its own, or publication of its own, most valuable confidential and proprietary information.

( ii ) Adler & Associates Entertainment shall permit access        to        its Confidential Information to the Producer's agents or employees or third parties only if such disclosure is reasonably believed to be necessary to the purposes of the Producer executing its responsibilities under this Agreement, and only if said agents, employees, or third parties reasonably require access to the Confidential Information for purposes approved by this Agreement, and have been apprised of this Agreement and the Producer's obligations to maintain the trade secret status of Confidential Information and to restrict its use as provided by this Agreement.

PRODUCER/LICENSOR

## 26.   COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

## 27.   ACKNOWLEDGEMENT

Producer and Adler & Associates Entertainment agree that no other obligations exist or shall exist or be deemed to exist unless and until a formal written agreement has been prepared and entered into by both Producer and Adler & Associates Entertainment, in which then Producer's and Adler & Associates Entertainment's rights and obligations shall be only such as are expressed in said formal agreements.

( a ) Producer affirms that should any provision or part of any provision be void or unenforceable, such provision or part thereof shall be deemed omitted, and this Agreement with such provision or part thereof omitted shall remain in full force and effect.

( b ) Producer affirms that to the best of their knowledge there are no prior or contemporaneous agreements in force, whether verbally and/or in writing, between Producer and other persons or entities that would impinge upon the abilities of the parties to this Agreement to execute their duties herein.

( c ) Producer affirms that this Agreement supersedes any prior agreements for the Picture made between Producer and Adler & Associates Entertainment.

( d ) Producer affirms that Adler & Associates Entertainment has recommended they seek legal counsel before entering into this Agreement. Producer affirms that all questions have been answered to their satisfaction and that all answers have been understood.

I have read and understand this Agreement and no oral representations of any kind have been made to me and this Agreement states our entire understanding with reference to the subject matter hereof. Any modification or waiver of any of the provisions of this Agreement must be in writing and signed by all parties to this Agreement.

PRODUCER/LICENSOR  RJ

**If the foregoing accurately reflects your understanding, please execute this Agreement where specified below, indicating your agreement of the terms set forth herein.**

**ADLER & ASSOCIATES ENTERTAINMENT, INC.**

By: _Jeremy J Lunt_     Date: _9/ 18/ 2016_

Sales Agent Representative: _Jeremy J. Lunt_
(Please print)

**AGREED TO AND ACCEPTED**

Licensor/Owner: _Rafael Jorge_
(Print Name)

By: _Rafael Jorge_     Date: _9|6|16_
(Signature)

Film Company: _Jorge Movie Production_    Tax I.D.# _27-2091498_

Address: _1145 liberty St. Springfield, MA, 01104_

_____

Phone _(413)657-6939_ E-mail: _Rafaeljorge584@Comcast.net_

**EXHIBIT "A"**

| TERRITORY | ASKING | ALL MINS | VIDEO MINS | TV MINS |
|---|---|---|---|---|
| ARGENTINA / URU / PAR | $14,600 | $3,650 | $650 | $3,000 |
| AUSTRALIA / NZ | $13,000 | $3,250 | $750 | $2,500 |
| BANGLADESH | $5,000 | $1,250 | $625 | $625 |
| BENELUX | $12,500 | $3,125 | $625 | $2,500 |
| BRAZIL | $15,000 | $3,750 | $1,250 | $2,500 |
| BULGARIA | $4,000 | $1,000 | $500 | $500 |
| CANADA (ENGLISH) | $25,000 | $6,250 | $1,250 | $5,000 |
| CANADA (FRENCH) | $9,000 | $2,250 | $750 | $1,500 |
| CENTRAL AMERICA | $3,100 | $775 | $275 | $500 |
| CHILE | $3,100 | $775 | $275 | $500 |
| CHINA | $4,000 | $1,000 | $375 | $625 |
| COLOMBIA | $4,600 | $1,150 | $400 | $750 |
| CROAT / SLOV. | $3,000 | $750 | $250 | $500 |
| CZECH / SLOVAK | $2,000 | $500 | $250 | $250 |
| EAST AFRICA | $5,000 | $1,250 | $625 | $625 |
| ECU / PERU / BOL | $4,600 | $1,150 | $400 | $750 |
| ENGLAND / UK | $15,000 | $3,750 | $1,250 | $2,500 |
| FRANCE | $10,000 | $2,500 | $1,250 | $1,250 |
| GERMANY | $25,000 | $6,250 | $1,250 | $5,000 |
| GREECE | $2,000 | $500 | $250 | $250 |
| HONG KONG | $4,000 | $1,000 | $500 | $500 |
| HUNGARY | $2,000 | $500 | $250 | $250 |
| INDIA | $4,000 | $1,000 | $500 | $500 |
| INDONESIA | $5,000 | $1,250 | $500 | $750 |
| ISRAEL | $5,000 | $1,250 | $500 | $750 |
| ITALY | $23,000 | $5,750 | $1,750 | $4,000 |
| JAPAN | $16,000 | $4,000 | $2,000 | $2,000 |
| MALAYSIA | $2,000 | $500 | $250 | $250 |
| MEXICO | $15,000 | $3,750 | $1,250 | $2,500 |
| MIDDLE EAST | $4,000 | $1,000 | $500 | $500 |
| PAKISTAN | $2,000 | $500 | $125 | $375 |
| PHILIPPINES | $2,000 | $500 | $250 | $250 |
| POLAND | $6,000 | $1,500 | $750 | $750 |
| PORTUGAL | $4,000 | $1,000 | $375 | $625 |
| ROMANIA | $4,000 | $1,000 | $375 | $625 |
| RUSSIA | $7,000 | $1,750 | $625 | $1,125 |
| SCAND | $12,000 | $3,000 | $1,500 | $1,500 |
| SINGAPORE | $2,000 | $500 | $250 | $250 |
| SOUTH AFRICA | $2,000 | $500 | $125 | $375 |
| SOUTH KOREA | $16,000 | $4,000 | $2,000 | $2,000 |
| SPAIN | $21,100 | $5,275 | $1,275 | $4,000 |
| TAIWAN | $4,000 | $1,000 | $375 | $625 |
| THAILAND | $6,000 | $1,500 | $625 | $875 |
| TURKEY | $6,500 | $1,625 | $500 | $1,125 |
| USA | $45,000 | $11,250 | $3,750 | $7,500 |
| VENEZUELA | $4,200 | $1,050 | $300 | $750 |
| WEST AFRICA | $4,000 | $1,000 | $500 | $500 |
| WEST INDIES | $4,000 | $1,000 | $500 | $500 |
| AIRLINES | $30,000 | $7,500 | - | - |
| TOTAL | $441,300 | $110,325 | $35,450 | $67,375 |

** Estimates are subject to change without notice due to market conditions **

PRODUCER/LICENSOR

**EXHIBIT "B"**

**TECHNICAL ITEMS:**

Producer shall furnish Adler & Associates Entertainment with two (2) hard drives of sufficient storage capacity, each one containing the following elements:

1) High-definition Quicktime file of the finished film, encoded with ProRes 422 (HQ) or 4444 video codec, and including the following audio channels: complete 2.0 Stereo mix and music and effects (M&E) in 2.0 Stereo
2) Transcoded and conformed delivery master of the film for video-on-demand/streaming/iTunes delivery, made at an approved media processing facility, packaged to include full artwork, trailer, metadata, chapter times, chapter titles, closed captions and subtitles.
3) Complete 2.0 Stereo mix as a WAV or AIFF file in uncompressed PCM audio format
4) Isolated dialogue, music, effects and combined music and effects (M&E) tracks as isolated AC3, WAV or AIFF files in uncompressed PCM audio format.
5) "Textless" scenes and shots in ProRes 422 (HQ) Quicktime format.
6) All musical tracks for the complete film as individual files in uncompressed PCM audio format.
7) Complete time-coded English language transcripts for every spoken word in the film matching the Quicktime file.
8) Complete time-coded Spanish language transcripts for every spoken word in the film matching the Quicktime file.
9) English subtitles in .srt format conforming to the Quicktime file.
10) Synced closed caption file in English in .scc format conforming to the Quicktime file.
11) Synced closed caption file in Spanish in .scc format conforming to the Qucktime file.

**OPTIONAL TECHNICAL ITEMS (Check all available):**

[  ] Complete 5.1 Surround mix
[  ] Isolated dialogue, music, effects and combined music and effects (M&E) tracks in 5.1 Surround
[  ] French subtitles/closed captions
[  ] Subtitles/closed captions in other languages (list all that apply): _____

---

PRODUCER/LICENSOR ⟨signature⟩

**EXHIBIT "B"**

**LEGAL MATERIAL AND OTHER DOCUMENTATION:**

1) A complete set of primary chain of title documents for the Picture, to be delivered in both electronic PDF form and as hard copies with two (2) copies of each agreement. Chain of title will include all of the following documents:
   - Cast and crew contracts
   - Copyright registration certificate for the film, the script and/or other underlying literary property
   - Director/producer agreements
   - Location agreements
   - Music use documentation (composer agreement, music license or purchase agreements, music co-administration agreement, recording artist agreement, synchronization and master use agreement, cue sheets)
   - Pre-existing contracts for the sales representation or distribution of the film
   - Production company documentation (will include articles of incorporation or articles of organization and/or fictitious business name registration)
   - Screenplay agreements (acquisition rights/adaptation rights/option and development agreements/screenwriter services agreements)

2) A set of secondary chain of title documents, to include as many of the following as are applicable to the Picture:
   - Actor/director loanout agreement
   - Casting director agreement
   - Certificate of good standing
   - Certificate of origin
   - Chain of title affidavit
   - Consultant agreement
   - Copyright report and opinion
   - Extras releases
   - Film clip license agreements
   - Life rights consent and releases
   - Literary acquisition agreements
   - Literary assignments
   - Minor releases
   - Model releases
   - Production service agreements
   - Quit claims
   - Shopping agreement
   - Stills and excerpts agreement
   - Title report and opinion
   - Trademark clearances
   - UCC report

PRODUCER/LICENSOR _____

**EXHIBIT "B"**

**LEGAL MATERIAL AND OTHER DOCUMENTATION (CONTINUED):**

3) Complete copy of the shooting script in PDF format (for feature films – if a documentary please provide complete copy of the editing script as PDF).
4) A satisfactory quality control (QC) report from an approved post-production facility.
5) A valid errors and omissions (E&O) insurance certificate naming Adler & Associates Entertainment as an insured party.
6) A complete list of all cast members, along with their roles, and all crew members, along with their position(s). Also please provide a head credits list, a tail credits list, and a billing block credits list.
7) Credit and logo obligations for any co-production companies, equipment/service providers or product placements.
8) Product placement contracts and obligations (if applicable)
9) Any union or SAG/AFTRA documentation.
10) A fully updated Internet Movie Database (IMDb) entry with all credited cast and crew and featuring mutually agreed upon poster art for the film

**PROMOTIONAL/SPECIAL FEATURES:**

1) Behind-the-scenes photographs
2) Behind-the-scenes footage
3) Production stills        :
4) A minimum of thirty (30) screen captures from the ProRes master file in uncompressed TIFF or BMP format.
5) Trailer in Quicktime ProRes 422 (HQ) format
6) Poster/graphical artwork in 300 dpi resolution.
7) A complete synopsis, logline and plot summary for the film

**OPTIONAL PROMOTIONAL/SPECIAL FEATURES (Check all available):**

[  ] Video EPK in ProRes 422 (HQ) or 4444 format
[  ] Filmmaker audio commentary
[  ] Deleted scenes/outtakes

PRODUCER/LICENSOR RT

**EXHIBIT "C"**

Title of film
(in English): In the Middle of the Pain

Original title of film
(if other than English title): En Medio del Dolor

Other title(s) released or promoted as
(includes English and non-English): _____

_____

Running Time: 1 hr 45 min  Running time of any alternate versions: _____

Director(s):
Luis Corporan

Producer(s) (include all co-producers
and executive producers): Producer: Yossel Abreu

Co-Producer: Dorian M. Feliz. Executive Producer: Rafael Jorge

Writers (include story/
Treatment writers): Rafael Jorge

_____

Composer(s):
Dorian M. Feliz, Yossel Abreu, Luis Corporan

Editor(s):
Dorian M. Feliz

PRODUCER/LICENSOR  Rt

**EXHIBIT "C"**

Video master format (check all that apply):

[ ✓ ] NTSC video      [ ] PAL video      [ ] 720p      [ ] 1080i      [ ✓ ] 1080p

[ ] 2K DCI      [ ] 4K DCI      [ ] Other: _____

Audio master format (check all that apply):

[ ] 1.0 Mono      [ ✓ ] 2.0 Stereo      [ ] 5.1 Surround      [ ] 7.1 Atmos

[ ] Other: _____

PRODUCER/LICENSOR R J

## AFFIDAVIT OF IDENTITY

State/Province of _MASSACHUSETTS_   County of _Hampden_   Country of _America - USA_

I, the Affiant herein, being first duly sworn upon oath does hereby state that:

1) My legal name is _Rafael Jorge_

2) My current legal residence is _1145 Liberty Street, Springfield, MA 01104_

3) My date of birth is _06-22-64_

4) I presented Passport/Driver's License/State ID to the Notary Public, as proof of my identity.

5) This affidavit is sworn to provide proof of my legal signature to Adler & Associates Entertainment Inc.

6) My film(s) represented by this Agreement is/are _En Medio del dolor_

I certify under penalty of perjury that I know the contents of this Affidavit signed by me and that the statements are true and correct.

By: _[Signature]_   _9-6-2016_
      (Signature)              (Date)

On _9-6-2016_ in the State/Province of _Massachusetts_, County of _Hampden_,
          (date)

Country of _America - USA_ _Rafael Jorge_ personally appeared before me,
                                         (applicant name)

_Patricia Reid_ and proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed
(Notary Public name)

to the within Agreement and acknowledged to me that he/she executed the same in his/her authorized capacity, and who, being first duly sworn on oath according to law, deposes and says that he/she has read the foregoing Agreement subscribed by him/her, and that the matters stated herein are true to the best of his/her information, knowledge and belief.

I certify under PENALTY OF PERJURY that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                    OFFICIAL NOTARY SEAL

_Patricia Reid_
Signature of Notary Public

PATRICIA Reid
Notary Publi
Massachusett
Commission Expires Nov

PATRICIA REID
Notary Public
Massachusetts
Commission Expires Nov 25, 2022